**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-185 |
| | ) | Judge Nora Barry Fischer |
| VICTOR BURNETT, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

Presently before the Court are the following pretrial motions filed by Defendant Victor

Burnett, Jr. ("Defendant"): Motion to Suppress Evidence (Docket No. 265); Motion for Pretrial

Release and Set Aside Order of Detention (Docket No. 370); and Motion for Transfer of Venue

(Docket No. 376).  The Government filed an Omnibus Response in opposition to said motions

and Defendant filed a Reply.  (Docket Nos. 396, 397).  The Court held a motion hearing on

November 15, 2018, the official transcript of which has been filed of record and considered by

the Court.  (Docket Nos. 418, 424).  The parties also submitted supplemental information

regarding Defendant's Motion for Pretrial Release and Motion for Transfer of Venue.  (Docket

Nos. 428, 429, 430).  After careful consideration of all of the parties' submissions, and for the

following reasons, Defendant's Motions are denied.

**II.     Background**

On August 30, 2016, Defendant and six co-defendants were charged in a one-count

Indictment with conspiracy to distribute and possess with intent to distribute one kilogram or

more of a mixture and substance containing a detectable amount of heroin, in violation of 21

U.S.C. § 846.  (Docket No. 1).  On January 30, 2018, Defendant filed his motion to suppress

evidence seized following the search of his residence in Oak Park, Michigan and his motorcycle pursuant to search and seizure warrants issued by United States Magistrate Judge Elizabeth A. Stafford of the United States District Court for the Eastern District of Michigan.

Subsequently, a Superseding Indictment was returned on June 19, 2018, charging Defendant with the same heroin conspiracy offense, as well as possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Docket No. 332). Defendant then filed his Motion for Pretrial Release and Motion for Transfer of Venue on July 23 and July 30, 2018, respectively.

### III.     Motion to Suppress Evidence

Defendant argues that evidence seized following the search of his residence and his motorcycle should be suppressed because the affidavit in support of the search warrants did not establish probable cause. (Docket No. 265, ¶¶ 13-16; Docket No. 266 at 4-5). The affidavit in question, which was prepared by Karen L. Springmeyer, a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), is attached as an exhibit to Defendant's suppression motion (Docket No. 265-3) (hereinafter, the "Affidavit"). After considering the Affidavit, Magistrate Judge Stafford found that it established probable cause to conduct a search of Defendant's residence and motorcycle for evidence of controlled substance offenses and issued search and seizure warrants for same. (See Docket Nos. 265-1, 265-2). Defendant requests an evidentiary hearing on his suppression motion. (Docket No. 266 at 6).

The Government responds that there is no need for an evidentiary hearing, as the Court can decide whether probable cause existed based on a review of the "four corners" of the Affidavit. (Docket No. 396 at 15; Docket No. 424 at 13-14). The Government maintains that the Affidavit contained information concerning numerous wiretapped conversations involving Defendant, as well as surveillance of him, which sufficiently linked his property to the crimes

under investigation and therefore established probable cause for issuance of the search warrants. (Docket No. 396 at 14). The Government further contends that the law enforcement officers acted in "good faith" in executing the search warrants. Id. For these reasons, the Government argues that Defendant's Fourth Amendment rights were not violated, and Defendant's motion to suppress should be denied. The Court agrees.

In United States v. Coca, Crim. No. 14-262, 2016 WL 7013037 (W.D. Pa. Dec. 1, 2016), this Court summarized the law applicable to review of a magistrate judge's determination of probable cause as follows:

> "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' " Illinois v. Gates, 462 U.S. 213, 236 (1983) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). A trial court exercises "only a deferential review of the initial probable cause determination made by the magistrate." United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (citing Gates, 462 U.S. at 236) (emphasis in original). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Gates, 462 U.S. at 238 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). The deference given to a magistrate's issuance of a warrant "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." United States v. Miknevich, 638 F.3d 178, 182 (3d Cir. 2011) (internal quotations omitted). Still, " 'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993) (internal quotations omitted).
>
> A magistrate's role in issuing a warrant is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. A warrant is to be upheld on review "as long as there is a substantial basis for a fair probability that evidence will be found." Conley, 4 F.3d at 1205. **In conducting this assessment, a reviewing court is confined "to the facts that were before the magistrate judge, i.e., the affidavit, and [the court may] not consider information from other portions of the record."** Jones, 994 F.2d at 1055. Stated otherwise, the District Court is restricted to viewing only the information confined by the "four corners" of the affidavit before the magistrate. United States v. Whitner, 219 F.3d 289, 295-96 (3d Cir. 2000). "The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner." Miknevich, 638 F.3d at 182. This includes "all the circumstances set forth in the affidavit

> before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." <u>Gates</u>, 462 U.S. at 238. Further, " 'probable cause is a fluid concept' that turns on 'the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.'" <u>Miknevich</u>, 638 F.3d at 182 (quoting <u>United States v. Shields</u>, 458 F.3d 269, 277 (3d Cir. 2006)). Proof beyond a reasonable doubt is not required. <u>Id.</u>

<u>Coca</u>, 2016 WL 7013037, at *4 (emphasis added).

As an initial matter, no evidentiary hearing is required in this case. The case law makes clear that this Court's review is confined to the "four corners" of the Affidavit that was before Magistrate Judge Stafford, and we are not to consider information from other portions of the record. <u>Jones</u>, 994 F.2d at 1055. Therefore, it would be improper to consider information elicited at a hearing that was not previously submitted to Magistrate Judge Stafford in support of the Affidavit.

Turning to the Affidavit, SA Springmeyer first summarized her six years of employment with the FBI, as well as her experience in investigating drug trafficking and other types of violent crimes. (Aff. ¶¶ 1-3). Based on her training and experience, SA Springmeyer explained that it is common practice for drug traffickers to store their drug inventory, associated paraphernalia, proceeds of drug sales and firearms used to protect their drug supply and profits in their residences, businesses and/or vehicles. (<u>Id.</u> ¶¶ 10-12). For reasons detailed in the Affidavit, SA Springmeyer averred that there was probable cause to believe that evidence of controlled substance offenses would be found in Defendant's residence and vehicle. (<u>Id.</u> ¶¶ 5, 7, 8b, 8f).

SA Springmeyer next summarized the background of the investigation. In early January 2015, the Pittsburgh Bureau of Police Narcotics Unit began receiving complaints of narcotics activity on Watson Boulevard located in the North Side of Pittsburgh. (Aff. ¶ 21). Surveillance of the area showed that known members or associates of a violent street gang known as the "Wilson Avenue Gangsters," including Clinton Robinson and others, were selling heroin from a

residence on Watson Boulevard.  (Id. ¶¶ 20, 23-25).

Beginning on February 29, 2016 and continuing into August 2016, investigators conducted a Title III wiretap investigation in which numerous telephones utilized by members of Robinson's drug trafficking organization were intercepted, including that of Vanier Murraine, who law enforcement determined was a heroin and cocaine trafficker.  (Aff. ¶¶ 35, 38).  The wiretap investigation revealed that Defendant supplied heroin to Murraine, who in turn supplied it to Robinson for distribution in the Western District of Pennsylvania.  (Id. ¶¶ 36c, 36e).

Relative to Defendant, SA Springmeyer described intercepted telephone conversations with Murraine in which they discussed drug transactions and their plans to meet regarding same or which were otherwise indicative of drug trafficking.  (Aff. ¶¶ 169, 171-174, 178, 184-185, 188-191, 196-199).  Additionally, one call involved a discussion wherein Defendant agreed to purchase ammunition for Murraine because he is a convicted felon who is precluded from possessing a firearm or ammunition.  (Id. ¶¶ 144-147).

SA Springmeyer also described surveillance of Defendant showing that he drove a motorcycle to Murraine's residence, he entered and exited Murraine's garage with a black backpack and then he put the backpack into a saddle bag on the motorcycle.  (Aff. ¶ 149).  In SA Springmeyer's experience, these short meetings, which would last approximately ten minutes and occur on average one or more times per week, were indicative of drug and/or money transactions between Defendant and Murraine.  (Id. ¶ 150).

SA Springmeyer additionally described intercepted calls between Murraine and others in which reference was made to Defendant.  (Aff. ¶¶ 94, 95, 97, 169, 179, 192-195).  In a call with Robinson, Murraine referred to Defendant as "his man," meaning his source of supply.  (Id. ¶ 169).  In another call with Robinson, Murraine vouched for the quality of heroin supplied by Defendant, stating that he had assisted Defendant with opening up the packaged heroin.  (Id. ¶

5

177).  In a call with an unidentified individual, Murraine referred to Defendant as his "big homie" who was vacationing in Puerto Rico and indicated that Murraine was storing Defendant's drugs and money at his residence while he was away.  (Id. ¶¶ 192-194).

Based on SA Springmeyer's Affidavit, Magistrate Judge Stafford issued search warrants for Defendant's residence and motorcycle on August 29, 2016.   (See Docket Nos. 265-1, 265-2).  This Court has reviewed the four corners of the Affidavit supporting the search warrants and concludes that the information contained therein plainly suffices to establish probable cause that evidence of narcotics offenses would be found upon a search of Defendant's residence and motorcycle.  As discussed above, the Affidavit provides details of the investigation that led agents to Defendant, it summarized intercepted telephone calls between Defendant and Murraine (a known drug distributor), which were indicative of drug trafficking, it recounted surveillance of short, weekly meetings between the two men, and it summarized Murraine's intercepted telephone calls with others in which he discussed Defendant in the context of drug trafficking.

The foregoing information contained in the "four corners" of the Affidavit constitutes a substantial basis for Magistrate Judge Stafford to have concluded that Defendant was engaged in drug trafficking and there was a fair probability that evidence of it would be found in his residence and motorcycle.  It was reasonable for Magistrate Judge Stafford to infer that Defendant stored drugs at his residence because "evidence of involvement in the drug trade is likely to be found where the dealers reside."  Whitner, 219 F.3d at 297, 298 (observing "a dealer logically could conclude that his residence is the best, and probably the only, location to store items" associated with drug dealing).  Application of this inference is appropriate because the Affidavit contained information supporting the following: 1) Defendant supplied Murraine with heroin; (2) Defendant resided at the residence which was searched; and (3) Murraine stored drugs and money for Defendant when he was in Puerto Rico, which indicated that Defendant did not want to leave

those items unattended at his own residence when he was away.  See United States v. Burton, 288 F.3d 91, 104 (3d Cir. 2002) (application of the inference that a drug dealer often stores evidence of drug crimes in his residence is based on evidence supporting three preliminary premises: "(1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's drug activities.").  It was also reasonable for Magistrate Judge Stafford to infer that Defendant stored evidence of drug dealing in his motorcycle, which surveillance showed he used when he met with Murraine.  Under the totality of the circumstances, the information contained in the Affidavit established probable cause for issuance of the search warrants, thus Defendant's motion to suppress the evidence seized from his residence and his motorcycle is denied.

Even if the Court would conclude that the warrants were not supported by probable cause, the Government alternatively argues that the law enforcement officers acted in "good faith" in executing them, therefore suppression of the challenged evidence is not warranted.  (Docket No. 396 at 14; Docket No. 424 at 18).  This Court has summarized the law applicable to the good faith exception to the warrant requirement as follows:

> The Supreme Court has held that evidence derived from a warrant not supported by probable cause is still admissible when obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate judge.  United States v. Leon, 468 U.S. 897, 926 (1984). "[T]he purpose of the exclusionary rule-to deter police misconduct—would not be furthered by suppressing evidence obtained during a search 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.' " United States v. Tracey, 597 F.3d 140, 150 (3d Cir. 2010) (quoting Leon, 468 U.S. at 919–20).
>
> The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922.  Indeed, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." United States v. Hodge, 246 F.3d 301, 307-308 (3d Cir. 2001) (citing

7

Leon, 468 U.S. at 922).  The United States Court of Appeals for the Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:

> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> 2)  where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
>
> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.
>
> Tracey, 597 F.3d at 151 (citations omitted).  These limited exceptions "involve conduct that is 'deliberate, reckless, or grossly negligent.' " Id. (quoting Herring v. United States, 555 U.S. 135 (2009)).

United States v. Gardenhire, Crim. No. 15-87, 2017 WL 1105733, at *15 (W.D. Pa. Mar. 24, 2017).

In this Court's estimation, even if the warrants were deemed insufficient, the good faith exception would apply to defeat the present suppression motion.  The record in this case simply does not support a finding that one of the four limited circumstances which permit the avoidance of the good faith exception apply here. See e.g., Tracey, 597 F.3d at 151.  There is also no evidence of conduct by law enforcement officers that was deliberate, reckless or grossly negligent.  For this additional reason, Defendant's motion to suppress is denied.

## IV.    Motion for Pretrial Release

Following the detention hearing held on September 2, 2016, Magistrate Judge Stafford entered a written order detaining Defendant.  Magistrate Judge Stafford found that the rebuttable presumption under 18 U.S.C. § 3142(e)(3) was triggered in this case based on the nature of the charge against Defendant.  (Docket No. 47-5 at 3).  She further found that the testimony and

information presented at the detention hearing established by clear and convincing evidence that there is no condition or combination of conditions which would reasonably assure the safety of the community. (Id. at 4). Magistrate Judge Stafford explained that she reached this conclusion for the following reasons:

> Burnett is charged with conspiracy to distribute a kilogram or more of heroin in the Western District of Pennsylvania, and is facing a mandatory minimum of ten years in prison. He is charged with supplying heroin to co-defendant Vanier Murraine, and the government proffered that he also purchased ammunition on behalf of Murraine (because Murraine had a felony record and could not legally purchase ammunition). During a search of Burnett's house at the time of his arrest, agents found 1 ½ kilograms of heroin and 5 firearms, including a 357 handgun and a AK 47 (either automatic or semiautomatic) that were in proximity with the heroin. The government also proffered that wiretap calls suggested that Burnett was using his businesses to facilitate his drug trafficking. Burnett proffered that his girlfriend, sister and other family members could act as his third-party custodian and that he could be under a home incarceration. However, the amount of heroin found in Burnett's house and his possession of multiple firearms, some high-powered, leads this Court to believe that no conditions or combination of conditions could reasonable assure the safety of the community.

(Id.).

Defendant now moves for revocation of the detention order and requests that he be released pending trial. (Docket No. 370). In support of his request for release, Defendant submitted certificates of achievement which he has obtained while incarcerated, as well as documents showing the types of programs and the coursework he has completed. (Docket No. 428, Exs. A and B). Defendant also submitted a letter from his mother, Rita Reece, indicating that she is now retired and available to serve as a third-party custodian for Defendant if he is released. (Id., Ex. C).

The Government opposes Defendant's request for release pending trial. The Government recognizes that Defendant's achievements while incarcerated are commendable but maintains that they are insufficient to undermine Magistrate Judge Stafford's sound reasoning that detention pending trial is required because no condition or combination of conditions can

reasonably assure the safety of the community. (Docket No. 396 at 20-21, 25-27; Docket No. 430 at 2-3). For reasons explained below, the Court agrees.

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* (the "BRA"), governs release and detention pending judicial proceedings. Pursuant to the BRA, a defendant must be released on his personal recognizance or upon execution of an unsecured appearance bond unless the court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. §3142(b). Following a hearing, if the judicial officer finds that no condition or combination of conditions of release will reasonably assure the defendant's appearance and the safety of the community, detention must be ordered. 18 U.S.C. §3142(e). Certain cases raise a rebuttable presumption that no conditions or combination of conditions will reasonably assure the appearance of defendant as required or the safety of the community. 18 U.S.C. § 3142(e)(3). This rebuttable presumption applies, among others, to cases in which there is probable cause to believe that the defendant committed an offense under 18 U.S.C. § 924(c) or an offense under the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, for which the maximum term of imprisonment is ten years or more. 18 U.S.C. § 3142(e)(3). An indictment charging a defendant with committing an offense enumerated in § 3142(e)(3) is sufficient to establish probable cause triggering the rebuttable presumption. United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

At the time of his detention hearing, Defendant was charged with conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, which carries a penalty of not less than 10 years to life imprisonment. See 21 U.S.C. § 841(b)(1)(A)(i). Defendant was later charged in the Superseding Indictment with the additional offense of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Both of these charges raise the

rebuttable presumption that no condition or combination of conditions of release will assure

Defendant's appearance and the safety of the community. See 18 U.S.C. § 3142(e)(3).

A defendant may rebut the presumption in §3142(e) by producing "some credible

evidence ... that he will appear and will not pose a threat to the community." United States v.

Carbone, 793 F.2d 559, 560 (3d Cir. 1986). The defendant's burden of production is relatively

light. United States v. Chagra, 850 F. Supp. 354, 357 (W.D. Pa. 1994) (citation omitted). If the

defendant rebuts the presumption, the burden of persuasion remains with the government. Id.

Thus, the government bears the burden of proving that defendant presents either a risk of flight

or a danger to the community.[1]

The Court agrees with Magistrate Judge Stafford that the evidence presented by

Defendant was insufficient to meet his burden to rebut the applicable presumption that no

conditions will reasonably assure the safety of the community.[2] See Docket No. 371-2 at 19

("And when you talk about overcoming the presumption that [Defendant] is a danger to the

community, I just think that's a tall order, given all that he's alleged to have been involved in.").

The Court further concludes that, even if Defendant had met his evidentiary burden to rebut the

applicable presumption, the Government has presented clear and convincing evidence that

---

[1]     The Government must prove by a preponderance of the evidence that defendant is a flight risk and that no condition or combination of conditions will assure his appearance at trial. United States v. Himler, 797 F.2d 156, 161 (3d Cir. 1986). The Government must prove by clear and convincing evidence that defendant is a danger to the safety of any other person or the community. United States v. Delker, 757 F.2d 1390, 1399 (3d Cir. 1985).

[2]     This Court exercises de novo review over the detention order entered by the magistrate judge. See Delker, 757 F.2d at 1394-95. No evidentiary hearing was required before this Court because the record was fully developed before Magistrate Judge Stafford, and "[t]his court may make its independent determination" on the issue of pretrial detention "based solely upon the evidence introduced at the prior hearing." United States v. Burgess, No. 2:09-cr-150, 2009 WL 2038148 at *1 (W.D. Pa. July 8, 2009) (citations omitted). The Court may also consider any additional evidence or proffers submitted in conjunction with any supplemental proceedings. Id. Consequently, the Court has considered the transcript of the proceedings before Magistrate Judge Stafford, along with Defendant's certificates of achievement and documentation showing the programs and the coursework he has completed while he has been incarcerated and letters from friends and family, including his mother who has indicated that she is willing to serve as a third-party custodian. See Docket No. 371-2; Docket No. 428, Exs. A, B and C.

pretrial detention was and is appropriately ordered in this case. In reaching these decisions, the Court has conducted an independent examination of the record evidence and balanced the four factors set forth in 18 U.S.C. §3142(g), which include the following: the nature and circumstances of the offense charged, including, *inter alia*, whether it involves a controlled substance or a firearm; the weight of the evidence against the person; the history and characteristics of the person; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The Court finds that the evidence proffered at the detention hearing, as supplemented before this Court, favors the Government on each of these cited factors. First, Defendant has been indicted for two very serious offenses, the convictions for which may result in the imposition of mandatory minimum sentences totaling 15 years or 180 months' incarceration, (i.e., 120 months at Count 1 and a consecutive 60 months at Count 2). See 21 U.S.C. §§ 841(b)(1)(A)(i) and 924(c)(1)(A)(i). As such, this factor weighs against Defendant.

Second, the evidence proffered by the Government at the detention hearing appears to be strong. The investigation revealed that Defendant was Murraine's source of heroin supply and also purchased ammunition for Murraine, who was precluded from doing so due to prior felony convictions. (Docket No. 371-2 at 5, 6). Intercepted telephone calls between Defendant and Murraine involved discussions concerning controlled substance transactions, the need to get money from people in Pittsburgh and the purchase of ammunition. (Id. at 6-7). In addition, surveillance showed Defendant and Murraine conducting drug transactions. (Id. at 7). When a search warrant was executed at Defendant's residence, approximately one and a half kilograms of heroin was recovered in a basement closet in close proximity to two firearms. (Id. at 5-6). Three additional firearms were found in the upstairs living area of the residence. (Id. at 6). In

sum, while recognizing that Defendant is presumed innocent of the charged offenses, the weight of the evidence proffered by the Government against him is strong and favors pretrial detention.

Third, with respect to his history and characteristics, Defendant has submitted character letters from friends and family. Defendant's counsel proffered information at the detention hearing, and reiterated in his pending motion, that he has ties to the community because he is a lifelong resident of the Detroit area, he is the owner and operator of two small businesses, he attended college, he has support from friends and family, he has three young children and he has made positive use of his time while incarcerated by taking advantage of the available resources and attaining numerous certificates. (Docket No. 370, ¶¶ 36, 40-45; Docket No. 371-2 at 7-10; Docket No. 428, Exs. A, B). Given the foregoing, Defendant has presented "some evidence" of the potential for him to return to a law-abiding life, if released. See Carbone, 793 F.2d at 560.

With that said, Defendant has suggested that his mother is willing to serve as a third-party custodian if he is released pending trial. "[T]he mere fact that a relative or other individual is willing to serve as a third party custodian for a defendant is not sufficient to justify release on such conditions but is among the factors to be considered when evaluating whether release or detention is appropriate in a given case." United States v. Bey, Crim. No. 15-87, 2015 WL 7176340, at *5 (W.D. Pa. Nov. 13, 2015). Magistrate Judge Stafford rejected the idea of Defendant's sister serving as a third-party custodian because she did not feel confident he was "supervisable" based on the large amount of heroin and the multiple weapons found in his home. (Docket No. 371-2 at 18). Defendant's counsel then commented that his mother and stepfather also were willing to supervise him, but Magistrate Judge Stafford explained that "the question [she had] to address [was] whether he's supervisable and [whether] she [was] going to place him in a situation where not only a third-party custodian, but a Pretrial Services officer is not really

able to provide the level of supervision necessary." (Id. at 19-20). Ultimately, Magistrate Judge Stafford was not satisfied that any conditions would assure the safety of the community given the heroin and firearms recovered during the search of his residence. (Id. at 20).

This Court also shares Magistrate Judge Stafford's concern regarding a third-party custodian, regardless of who would assume that role. Though Defendant's mother is no doubt well-intentioned, the mere fact that she is retired and willing to serve as a third-party custodian does not mean that she, or anyone else, could adequately supervise a defendant who is charged with extremely serious drug trafficking and firearms offenses.

As to the final factor, the nature and seriousness of the danger to the community that would be posed by Defendant's release likewise favors pretrial detention in this case. Drug trafficking poses a substantial risk of harm to the community, particularly the trafficking of very dangerous and addictive drugs like heroin. United States v. Atkins, Crim. No. 15-87, 2015 WL 4920831 at *7 (W.D. Pa. Aug. 18, 2015) (citing United States v. Gibson, 481 F.Supp.2d 419, 423 (W.D. Pa. 2007) ("violence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs.")). Furthermore, as Magistrate Judge Stafford observed, "the weaponry with the drugs does suggest a greater danger to the community." (Docket No. 371-2 at 18). This Court agrees that Defendant's possession of firearms, even if otherwise legally possessed, creates a very serious risk of danger when combined with drug trafficking. Therefore, this final factor weighs strongly in favor of detention.

In consideration of the above factors, the Court concludes that no condition or combination of conditions would assure the safety of the community if Defendant was released pending trial. Accordingly, Defendant's motion for pretrial release is denied.

**V.      Motion for Transfer of Venue**

Defendant asserts that this case should be transferred to the Eastern District of Michigan because "although the conspiracy is alleged to have occurred in the Western District of Pennsylvania, [his] alleged actions did not." (Docket No. 376, ¶ 11).  In that regard, Defendant contends that it is irrelevant whether or not the drug conspiracy "could 'reasonably foreseeably' transcend to the Western District of Pennsylvania." (Id. ¶ 12).  Defendant also requests transfer to the Eastern District of Michigan for convenience because he is the lone Defendant who remains in this case and he is from Michigan, witnesses called to testify on his behalf live there and his lawyer is based there. (Id. ¶¶ 14, 15, 18, 22).  The Government objects to a transfer, arguing that venue is proper in this District and Defendant otherwise failed to meaningfully analyze the propriety of a transfer for convenience. (Docket No. 396 at 17-19).

As an initial matter, venue is proper in the Western District of Pennsylvania as to both the drug conspiracy charge and the firearm charge against Defendant, a point which Defendant does not dispute.[3]  See Docket No. 397 at 6 ("Defendant agrees with opposing counsel, that the

---

3        Pursuant to Federal Rule of Criminal Procedure 18, "the government must prosecute an offense in a district where the offense was committed."  In accordance with 18 U.S.C. § 3237(a), "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  The Third Circuit Court of Appeals has further clarified that "venue can be established wherever a co-conspirator has committed an act in furtherance of the conspiracy."  United States v. Perez, 280 F.3d 318, 329 (3d Cir. 2002).
        As to venue for the drug conspiracy charge, contrary to Defendant's position, it need not be reasonably foreseeable to him that conduct in furtherance of the conspiracy would have occurred in the judicial district where he is charged.  See United States v. Renteria, 903 F.3d 326, 331 (3d Cir. 2018).  In Renteria, the Third Circuit determined that venue in the Eastern District of Pennsylvania was proper for a drug conspiracy prosecution, even though the defendant did not act in that district or direct any of his actions there, because his co-conspirators sent methamphetamine to an undercover agent who posed as drug trafficker and directed phone calls to him there.  Id. at 331-32.  Likewise, venue is proper in this District on the drug conspiracy charge against Defendant because various actions in furtherance of the conspiracy were undertaken by co-conspirators here as described in detail in the Affidavit.  Venue is also proper in this District on the charge against Defendant for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  See United States v. Rodriguez–Moreno, 526 U.S. 275, 281-82 119 (1999) (holding that venue in a prosecution for using or carrying a firearm during and in relation to any crime of violence in violation of 18 U.S.C. § 924(c)(1) is proper in any district where any part of the crime of violence was committed); United States v. Thompson, No. 18-5021, 2018 WL 6603965 at *8 (6th Cir. Dec. 14, 2018) ("So long as venue is proper for a drug-conspiracy charge, it is also proper for a § 924(c) charge predicated on that drug conspiracy.").

case can be prosecuted in *any* district. . . . Defendant asserts that *any* district includes the Eastern District of Michigan.") (emphasis in original); Docket No. 424 at 24 ( "The government says in their response . . . [that] the case can be prosecuted in any district. We absolutely agree with that . . . and what we're asking for that at this point . . . that the most appropriate district is the Eastern District of Michigan."). Therefore, we consider Defendant's request to transfer this case for convenience.

Pursuant to Federal Rule of Criminal Procedure 21(b), "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim and the witnesses, and in the interest of justice." The decision whether to transfer a case is committed to the discretion of the district court. In re United States, 273 F.3d 380, 387 (3d Cir. 2001). In determining whether a transfer is in the interest of justice, the court should consider the following ten factors: (1) the location of the defendant, (2) the location of possible witnesses, (3) the location of events likely to be in issue, (4) the location of documents and records likely to be involved, (5) disruption of the defendant's business unless the case is transferred, (6) expense to the parties, (7) the location of counsel, (8) relative accessibility of the place of trial, (9) docket condition of each district or division involved, and (10) any other special elements which might affect the transfer. Id. at 387-88 (citing Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964)). The burden is on the defendant to make the case for transfer. In re United States, 273 F.3d at 388; United States v. Coffee, 113 F.Supp.2d 751, 753 (E.D. Pa. 2000) ("burden is on the defendant to show that transfer would serve the purpose specified in the Rule").

The defendant should support a motion to transfer with "affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary

elements for a transfer." In re United States, 273 F.3d at 386 (quoting Plum Tree, Inc. v.

Stockment, 488 F.2d 754, 756–57 (3d Cir. 1973)). Such evidence may include:

> [N]ames and addresses of witnesses whom the moving party plans to call, ...
> affidavits showing the materiality of the matter to which these witnesses will
> testify, statements by the moving part[y] of the business difficulties or personal
> hardships that might result from ... having to defend against the suit in the district
> court where it was originally brought, affidavits concerning the relative ease of
> access to sources of documentary evidence, and other materials where
> appropriate.

Id. (quoting Plum Tree, 488 F.2d at 757, n.2); United States v. Streeval, Crim. No. 00–0477-2,

2001 WL 34355637, *1 (E.D. Pa. Dec. 3, 2001). In this case, Defendant has not supported his

motion to transfer with any such information. Nevertheless, with this framework in mind, the

Court will address the foregoing factors based upon the available information contained in the

record.

We begin by considering the location of Defendant, his counsel and expense to the parties.

With respect to expense, Defendant does not claim to be indigent and has retained private

counsel, Attorney Perkins, whose office is located in Detroit, Michigan. When Defendant chose

to retain Attorney Perkins and counsel agreed to represent him, both were well aware that this

case was pending in the Western District of Pennsylvania and proceedings would be scheduled

in Pittsburgh. They were also aware of Defendant's incarceration at CCA in Youngstown, Ohio,

where many federal prisoners who are pending trial in the District are detained. Therefore, both

Defendant and his chosen counsel were cognizant that travel from Michigan to Youngstown

and/or Pittsburgh, which is not particularly onerous, would be required for meetings, conferences

and attendance at court proceeding. To the extent that scheduling in-person meetings at CCA

between Defendant and his counsel may prove challenging, such logistical concerns exist for any

lawyer who represents a federal prisoner detained there, regardless of where that lawyer's office

is located.  In sum, Defendant and Attorney Perkins knew at the outset that his representation would likely require additional attention to logistics, some travel and associated expense.  Thus, consideration of Defendant's location, his counsel's location and expense do not weigh in favor of a transfer at this stage of the proceedings.

We next consider the location of possible witnesses, the location of the events in issue, the location of documents and records, disruption of the defendant's business unless the case is transferred and the relative accessibility of the place of trial.  Defendant contends that witnesses who may testify on his behalf live in Michigan, but he has not identified any such witness who would have difficulty or be unable to travel to Pittsburgh for a trial.  Moreover, as counsel for the Government noted at oral argument, the investigating case agents are located in Pittsburgh, as is the evidence which was seized.  In addition, there is no basis to transfer due to the relative accessibility of the place of trial, as Pittsburgh is readily reached by automobile, airplane and train.  Further, Defendant has not argued that disruption to his business requires transfer, nor can he do so, as he is currently incarcerated.  All told, these factors do not weigh in favor of transfer.

Finally, we consider the docket condition of each district involved and any other special elements which might affect the transfer.  Defendant submitted supplemental information concerning the respective dockets and the composition of the jury pools in the Western District of Pennsylvania and the Eastern District of Michigan, but he did not present any compelling argument to transfer this case on either of those bases.  See Docket No. 429.  On the other hand, the Government provided historical data for the period 2013 – 2018 compiled by the United States Courts indicating that the Eastern District of Michigan had more criminal felony cases filed per judgeship than the Western District of Pennsylvania.  See Docket No. 430-1. Accordingly, there is nothing to suggest that this case should be transferred based on docket

condition. With respect to whether there is any other special element which might affect the transfer, considerations of judicial economy weigh against transfer because this Court has presided over the case for more than two years and is well familiar with it. It would be a waste of judicial resources to transfer the case to another district at this stage of the proceedings. This is so even though Defendant claims a special element in favor of transfer to the Eastern District of Michigan is his status as "the last man standing" in this case, and he is a Michigan resident. (Docket No. 376, ¶ 18; Docket No. 424 at 23). In this Court's estimation, that fact simply does not trump the other considerations discussed above which lead the Court to conclude that a transfer is not warranted.

Based on all the relevant factors, Defendant has not met his burden for transfer of this case to the Eastern District of Michigan. Accordingly, Defendant's motion to transfer venue is denied.

## VI.    **Conclusion**

For the reasons discussed herein, Defendant's Motion to Suppress Evidence (Docket No. 265), Motion for Pretrial Release and Set Aside Order of Detention (Docket No. 370) and Motion for Transfer of Venue (Docket No. 376) are DENIED.

An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:  January 4, 2019

cc/ecf:  All counsel of record